Erin Rose Ronstadt, SBN 028362
Clayton Warren Richards, SBN 029054
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
clayton@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond A. Ortega, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Airport and Aviation Professionals, Inc. Group Disability Plan, an ERISA benefit plan; Unum Life Insurance Company of America, a plan fiduciary; and Airport and Aviation Professionals, Inc., a plan administrator, | |
| Defendants. | |

For his claims against the Airport and Aviation Professionals, Inc. Group Disability Plan (the "Plan"); Unum Life Insurance Company of America ("Unum"), a plan fiduciary; and Airport and Aviation Professionals, Inc. ("AvAir Pros"), a plan administrator and fiduciary (collectively, "Defendants"), Plaintiff Raymond A. Ortega ("Mr. Ortega" or "Plaintiff") alleges as follows:

### *Jurisdiction, Venue, and Parties*

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by AvAir Pros for the benefit of its employees.

3. AvAir Pros is the Plan Sponsor, Plan Administrator, a Plan fiduciary, and the employer.

4.     Mr. Ortega was a participant and beneficiary of the Plan as an employee of AvAir Pros.

5.     Unum is a third-party claims administrator for the Plan.

6.     Unum is a Plan fiduciary.

7.     Under the Plan, Unum insures eligible employees of AvAir Pros for short-term disability ("STD") and long-term disability ("LTD") benefits pursuant to Policy Number 68482-001 (the "Policy").

8.     At the time Mr. Ortega sought LTD benefits under the Plan, Unum administered claims for AvAir Pros under the Plan, acted on behalf of the Plan, and acted as an agent of AvAir Pros and the Plan to make final decisions regarding the payment of disability benefits for the Plan.

9.     AvAir Pros and Unum have a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

10.   Mr. Ortega currently resides in Pinal County, Arizona and has been a resident of Pinal County at all times since becoming a Plan participant.

11.   The Plan and AvAir Pros have their principal places of business in the State of Florida.

12.   Unum has its principal place of business in the State of Maine.

13.   Defendants Unum and the Plan are licensed and authorized to do business in Pinal County, Arizona, and reside and are found within Pinal County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14.   This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

15.   Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## **GENERAL ALLEGATIONS**

### ***Mr. Ortega's Disability***

16.   Mr. Ortega suffers from respiratory and cardiac medical conditions.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

17.  His medical conditions cause a host of symptoms that severely diminish his physical abilities and capacity to work.

18.  These symptoms include shortness of breath with minimal physical exertion, fatigue, swelling in his lower extremities, and weakness.

19.  Mr. Ortega's treating specialist physicians and other providers have verified and confirmed his medical conditions using objective diagnostic testing.

20.  Mr. Ortega's medical conditions are Disabling.

### *Mr. Ortega's Employment*

21.  In 2017, AvAir Pros hired Mr. Ortega as an Assistant Project Manager.

22.  At the time his Disability began, Mr. Ortega worked for AvAir Pros as an Assistant Project Manager.

23.  Mr. Ortega's primary functions in this job were to perform daily construction site walk-throughs and oversight with relevant government agencies and others; quality control; on-site coordination of team efforts to ensure timely completion of work tasks; inspection of construction project components; and to track and manage progress for daily and weekly reporting.

24.  The onsite field work exposed Mr. Ortega to various environmental hazards including construction, drywall, and insulation dust; exhaust, welding, paint, or adhesive fumes; noise; uneven work surfaces; and high ambient temperatures of over 100 degrees Fahrenheit.

25.  On an average day, Mr. Ortega would be on his feet for about seven hours.

26.  Mr. Ortega's onsite field duties comprised about 90% of his average workday.

27.  The in-office component of Mr. Ortega's job required sending reports and emails for the remaining time.

28.  On the morning of November 5, 2019, as Mr. Ortega was performing field inspections, he began experiencing dizziness, lightheadedness, a sensation of heart fluttering in his chest, general weakness, and heavy perspiration.

29.  Mr. Ortega's supervisor and coworker noticed he was in distress and called 911.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1    30. An ambulance took Mr. Ortega to Banner University Medical Center, and he was

2    hospitalized.

3    31. Upon admission to the hospital, Mr. Ortega's heart rate exceeded 100 beats per

4    minute.

5    32. Mr. Ortega was discharged after 24 hours of observation, but he continued to

6    experience symptoms of shortness of breath, fatigue, and sleeplessness in the days and

7    weeks ahead.

8    33. Mr. Ortega missed many days of work in November and December 2019 due to

9    persistent, debilitating symptoms.

10   34. On January 2, 2020, Mr. Ortega suffered another flare-up of his pulmonary

11   condition, for which he sought appropriate medical treatment.

12   35. Mr. Ortega needed work rest and a period of recuperation to improve his

13   symptoms and to allow his medications to take their course.

14   36. On January 14, 2020, at the direction of his treating provider, Mr. Ortega applied

15   for STD benefits administered by Unum.

16   37. Mr. Ortega's application for benefits was accompanied by a statement from his

17   treating provider who noted he needed to stop working due to his medical conditions.

18   38. Unum paid Mr. Ortega's STD benefits claim through the end of March 2020, the

19   maximum benefit period for those benefits, and reviewed his claim for LTD eligibility.

20   ***Mr. Ortega's LTD Benefits***

21   39. The Policy governing Mr. Ortega's LTD claim is an own-occupation policy,

22   meaning Mr. Ortega must only prove he is incapable of performing the material and

23   substantial duties of his regular occupation.

24   40. The Policy defines "Disability" as follows: "[Y]ou are limited from performing the

25   material and substantial duties of your regular occupation due to your sickness or injury; and

26   you have a 20% or more loss in your indexed monthly earnings due to the same sickness or

27   injury; and during the elimination period, you are unable to perform any of the material and

28   substantial duties of your regular occupation."

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-4-

41.  The Policy defines "limited" as "what you cannot or are unable to do."

42.  The Policy defines "material and substantial duties" as those duties "normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified. . ."

43.  The Policy definition of "regular occupation" is "the occupation you are routinely performing when your disability begins."

44.  In an internal claim note dated April 21, 2020, Unum's Disability Benefits Specialist ("DBS") stated: "Based on [Mr. Ortega's] noted multiple complaints, testing, and continued need for follow-up and testing, it is reasonable to support [his] inability to return to his prior level of functional capacity from the [date of disability] until at least current."

45.  The DBS referred Mr. Ortega's claim to a vocational consultant to contact Mr. Ortega's employer to determine if he could work remotely from home.

46.  In response to Unum's inquiry, a representative of AvAir Pros explained, "Ray Ortega's responsibilities center around field construction oversight and coordination. His role requires daily site walkthroughs to track and manage contractor progress including the development of daily and weekly site observation reports. Coordination and communication of logistics plans, phasing plans and schedule updates with the contractor and stakeholders, are a regular occurrence and require visibility to the construction and potential operational impact. Two components of the program are in the closeout phase which include punch list work, final permit walkthroughs and coordination with the owner's operation. Working remotely cannot be accommodated for this role/activities."

47.  Unum awarded Mr. Ortega's LTD claim in a letter dated April 22, 2020.

48.  In that letter, Unum stated: "Our evaluation of your medical restrictions and limitations includes a review of your medical records. As we perform our review of your claim, it is your right, or the right of your attending physician, either directly or through your representative, to request an 'independent medical examination' (IME) should opinions differ on the degree of medical impairment. Any such request will be evaluated under our IME protocol and guidelines including consideration of whether our decision is

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

related to your medical condition. We will consider your request in a timely manner and provide you with our response in writing."

49.   At that time, according to internal vocational analyses, Unum improperly classified Mr. Ortega's past work as sedentary work requiring mostly sitting and only occasional standing or walking.

50.   By the end of May 2020, Mr. Ortega's LTD claim had been referred for a "Clinical Analysis" based on "current stable status and [the restrictions and limitations] provided."

51.   In a June 2, 2020 vocational opinion, Unum's vocational consultant incorrectly classified Mr. Ortega's job of Assistant Project Manager as a sedentary job requiring only "occasional" standing and walking, *i.e.,* standing and walking for no more than two-and-a-half hours per day combined.

52.   Unum's Clinical Consultant used the inaccurate vocational opinion to state "it is uncertain as to what would preclude [Mr. Ortega] from returning to his prior level of functional capacity."

53.   Unum then forwarded Mr. Ortega's claim to a peer review consultant with a background in family medicine, Dr. Tammy Lovette, who asserted Mr. Ortega had no functional limitations which would preclude sedentary work.

54.   Before she issued her report, however, Dr. Lovette sent correspondence to PA-C Brittany Johnson, Mr. Ortega's treating provider, regarding whether Mr. Ortega could perform sedentary work.

55.   PA-C Johnson replied in writing the very next day that Mr. Ortega could not perform sedentary work.

56.   PA-C Johnson explained: "While [Mr. Ortega's] [atrial fibrillation] is stable, he is still having issues with his [chronic obstructive pulmonary disease]. We have tried several inhalers, and while they help, he continues to have shortness of breath with very minimal physical activity and oxygen levels frequently in the low 90s. He has been trying to follow-up with a pulmonologist but due to COVID this has been difficult. He was given a new referral at [his] appointment today."

-6-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

57.   In her internal report, which Unum did not share with Mr. Ortega prior to summarily terminating his benefits without notice or warning, Dr. Lovette stated: "I have considered the utility of having the insured undergo an independent medical review and examination. However, I found the information in the file to be sufficient for analysis as above."

58.   After procuring Mr. Ortega's most recent pulmonology treatment note, Unum forwarded Dr. Lovette's report to its Designated Medical Officer, Dr. Neil Greenstein, who concurred with Dr. Lovette's opinion in a two-page report.

59.   On June 26, 2020, Unum terminated Mr. Ortega's LTD claim (the "Denial").

60.   In the Denial, Unum relied on the opinions of Drs. Lovette and Greenstein and the June 8, 2020 report of its vocational consultant, Thomas Waymire, M.S., C.R.C.

61.   Unum did not provide Mr. Ortega with any notice that his claim was under an ongoing eligibility review.

62.   During the review, Unum did not offer Mr. Ortega to be examined by an IME, although it was his contractual right to request one under these circumstances.

63.   At the time it denied benefits, Unum improperly characterized Mr. Ortega's job was properly classified as sedentary work.

64.   On July 29, 2020, Mr. Ortega appealed the Denial without the assistance of counsel (the "Appeal").

65.   He noted that Unum had failed to provide him with an opportunity to request an IME prior to terminating his benefits and had mischaracterized his regular occupation.

66.   He submitted additional medical evidence from his cardiologist and primary care doctor, as well as medical literature regarding his medication side effects.

67.   In a letter dated September 3, 2020, Unum provided Mr. Ortega with evidence supporting the termination of his benefits, which it had gathered during the review of his Appeal.

68.  This evidence included the August 26, 2020 vocational file review from Unum consultant Shannon O'Kelley and the September 2, 2020 opinion from medical consultant Beth Schnars, M.D.

69.  The secondary vocational file review noted that Mr. Ortega's work should be characterized as light work, not sedentary, due to the necessary standing and walking requirements.

70.  The very next day, Unum sent a letter to Mr. Ortega, stating it was obtaining an IME.

71.  Mr. Ortega retained counsel to assist with his response.

72.  In a letter dated September 16, 2020, Mr. Ortega's counsel requested immediate reinstatement of Mr. Ortega's benefits and noted his objection to participation in an IME during the appeals process.

73.  Unum's desire to schedule an IME after the Denial demonstrates it did not fully and fairly investigate the LTD claim before terminating benefits. In fact, Unum did not even have an accurate understanding of Mr. Ortega's regular occupation when evaluating the claim, which is reversible error.

74.  On December 8, 2020, Mr. Ortega responded to Unum's adverse evidence through counsel (the "Response").

75.  With the Response, Mr. Ortega submitted significant new documentation supporting his Disability, including a two-day independent functional capacity evaluation ("FCE") report, updated medical records, a vocational opinion from an outside expert, a journal of home blood oxygen readings, and a personal statement.

76.  Of note, the independent FCE indicated Mr. Ortega's blood oxygen levels dropped to "dangerously low levels" during testing.

77.  In a report exceeding 20 pages, the FCE examiner exhaustively noted a multitude of significant clinical signs supporting the need for workplace limitations – limitations that precluded Mr. Ortega from performing his regular occupation.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

78.  The FCE examiner ultimately concluded that "Mr. Ortega is UNABLE to perform the physical demands of his most recent work as an Assistance Project Manager or ANY other work including all types of SEDENTARY work on a regular and consistent basis (i.e., full time)." (emphasis in original.)

79.  Unum forwarded this evidence to Dr. Schnars, who summarily reaffirmed her initial opinion.

80.  On December 16, 2020, Unum forwarded Dr. Schnars' report to Mr. Ortega for comment.

81.  In that correspondence, Unum stated, "[a]ny provided information should be time relevant to when your client's benefits ended on June 26, 2020."

82.  On January 15, 2021, Mr. Ortega responded through counsel (the "Second Response.")

83.  The Second Response included an addendum report from the FCE examiner.

84.  In his four-page addendum, the FCE examiner explained: "The functional limitations revealed during [Mr. Ortega's] FCE on October 28, 2020 and October 29, 2020 are chronic in nature, **and date back to at least when he first went off work on January 2, 2020**." (emphasis added).

85.  Four days later, on January 19, 2021, Unum denied Mr. Ortega's Appeal (the "Final Denial").

86.  Unum relied on Dr. Schnars' earlier reports in the Final Denial.

87.  Unum did not provide Dr. Schnars, or any other physician consultant, with the FCE evaluator's January 12, 2021 addendum report.

88.  Unum fabricated new reasons for terminating Mr. Ortega's claim by noting AvAir Pros placed him on a Performance Improvement Plan in November 2019, insinuating that Mr. Ortega was not Disabled but instead out of work due to performance issues.

89.  Contrary to Unum's claims, AvAir Pros granted Mr. Ortega a performance award consisting of a cash bonus and stock conversion units in October 2019.

90. AvAir Pros based the performance award, in part, on "an assessment of individual employee contributions to the overall success of [AvAir Pros] during the review period."

91. Mr. Ortega has not worked since January 2, 2020 due to his Disability.

92. Mr. Ortega cannot perform the material and substantial duties of his regular occupation and therefore comes within the definition of Disability under the Plan.

93. Mr. Ortega exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants Unum and the Plan)**

94. All other paragraphs are incorporated by reference.

95. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

96. The Plan represents LTD coverage and a promise to provide LTD benefits until Mr. Ortega is no longer Disabled under the terms of the Plan.

97. Mr. Ortega continues to be Disabled from his regular occupation or any other occupation.

98. Mr. Ortega has claimed the benefits under the Plan to which he is entitled.

99. Defendants Unum and the Plan wrongfully terminated those benefits.

100. Mr. Ortega reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until he reaches age 65, or until he was no longer Disabled.

101. Unum and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

102. Although the Policy states Unum has discretion with respect to determining eligibility and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

103. On information and belief, there is no written Plan document that reserves discretion to the Plan Administrator or contains terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Unum.

104. Even if AvAir Pros properly delegated discretionary authority to Unum, in light of Unum's wholesale and flagrant procedural violations of ERISA, Mr. Ortega should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

105. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Ortega is informed and believes that Unum makes claims decisions based on the claims resources and financial risk it faces on certain claims.

106. The Policy requires only that Mr. Ortega be unable to perform the duties of his regular occupation, as opposed to any occupation.

107. Consequently, absent a showing of significant medical improvement, Mr. Ortega would have been eligible for benefits until the maximum benefit duration, a period of five years.

108. On information and belief, Unum's motivation in terminating Mr. Ortega's benefits was to eliminate a long-term financial liability.

109. As a result, Unum failed to conduct a full and fair review.

110. Unum did not properly consider all of the available evidence when terminating Mr. Ortega's benefits.

111. Unum's conduct violated the Policy and Unum's own claims administration guidelines because it failed to offer Mr. Ortega an IME before terminating his benefits.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

112.  Unum's attempt to schedule an IME after it already terminated Mr. Ortega's benefits constitutes a tacit admission it had not fully investigated his claim prior to terminating benefits.

113.  Unum ignored the June 13, 2020 response from PA-C Brittany Johnson, who concluded Mr. Ortega could still not perform sedentary work.

114.  Unum also ignored the independent FCE and vocational reports Mr. Ortega submitted with his Response and Second Response.

115.  Unum did not forward the January 12, 2021 FCE addendum report to any medical reviewer for comment, although that addendum directly addressed the time period Unum was placing at issue.

116.  Instead, Unum ignored the FCE addendum report and issued Final Denial based on Dr. Schnars' prior conclusions.

117.  Unum exclusively relied on medical reviews provided by in-house medical consultants and non-examining physicians.

118.  As noted in Mr. Ortega's December 8, 2020 Response, on information and belief, Dr. Schnars has a lengthy professional relationship with Unum through which she provides cursory reports citing a "lack of physiologic evidence," which Unum then relies on to terminate valid LTD claims.

119.  Unum's retention of Dr. Schnars to evaluate these claims is directly informed and motivated by its structural conflict of interest.

120.  On information and belief, Unum used in-house reviewers in evaluating Mr. Ortega's claim because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Mr. Ortega's benefits.

121.  Unum abused its discretion by basing its decision on unreliable and inaccurate information, such as the reports provided by Dr. Schnars. When confronted with this knowledge, Unum continued to rely on Dr. Schnars despite her obvious bias.

122. On information and belief, Unum provides its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

123. Unum routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

124. In the Final Denial, Unum asserted Mr. Ortega had "adequate exercise capacity" on stress testing, an idea that was roundly debunked during the functional capacity examination, when Mr. Ortega exhibited dangerously low oxygen saturation levels upon minimal physical exertion.

125. Unum's biased medical consultants mischaracterize evidence to support their conclusions an individual can work.

126. Dr. Schnars, for instance, noted Mr. Ortega's treating pulmonologist "is not opining [restrictions and limitations] due to longstanding COPD," but Mr. Ortega's treating pulmonologist did not express that. He was merely silent on the matter.

127. Unum's consultants characterized the absence of evidence from a provider as that provider's tacit agreement the individual is not Disabled. This is a gross mischaracterization.

128. Unum failed to properly consider the opinions of Mr. Ortega's treating providers and independent outside consultants.

129. In terminating Mr. Ortega's LTD benefits, Unum completely disregarded evidence that Mr. Ortega's respiratory conditions had not changed or improved.

130. On information and belief, Unum engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

131. In its December 16, 2020 correspondence, Unum asserted, "[w]e believe the available information supports [the unfavorable] decision."

132. Unum inadvertently revealed its intention to uphold the termination of benefits even before receiving any substantive response from Mr. Ortega.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

133.  Unum has a history of parsimonious claims handling, which is directly relevant to this Court's analysis of the standard of review, including whether to confer Unum with discretionary authority, and it is also relevant to this Court's consideration of Unum's procedural violations.

134.  Unum's ERISA violations were more than de minimis.

135.  Unum failed to engage in a "meaningful dialogue" regarding Mr. Ortega's claim.

136.  Notably, Unum insisted that Mr. Ortega submit only documentation "time relevant" to the original Denial.

137.  Unum cannot ignore documentary evidence post-dating June 2020.

138.  Unum engrafted terms onto the Policy, depriving Mr. Ortega his right to a full and fair review under ERISA.

139.  It is impossible for Mr. Ortega to generate evidence contemporaneous to the Denial six months after the fact.

140.  Unum engrafted superfluous requirements of proof onto the Plan, making it impossible for Mr. Ortega to provide the documentation necessary for Unum to overturn its Denial. Even still, he provided the best evidence possible in the form of a two-day FCE.

141.  Unum engaged in procedural irregularities to serve its own financial best interests.

142.  On information and belief, Unum's termination of Mr. Ortega's claim is tied directly to an aggressive effort by Unum to limit its liability on LTD insurance claims in early 2020.

143.  In the first quarter of 2020, the period of time when Mr. Ortega filed his LTD claim, Unum had suffered a $120 million net income loss compared to the corresponding quarter from the year prior.

144.  The Maine Bureau of Insurance concluded that Unum's statutory reserves were deficient by $2.1 billion at the end of 2018, necessitating a plan to "phase-in" hundreds of millions of dollars to ensure its statutory reserve obligations were met.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

145.  Unum's group disability business experienced a nearly 8% decrease of adjusted operating income and a 15% decrease in sales compared to the first quarter of the prior year.

146.  Unum only suffered a group disability benefit ratio loss of 1.5% "due primarily to favorable claim recovery experience in our group long-term disability product line, partially offset by higher claims incidence in both our group long-term and short-term disability product lines." *Pandemic Cited As Unum Faces Major Income Drop, $2.1 Billion Reserve Deficiency At Maine Operation*, May 6, 2020, https://www.chattanoogan.com/2020/5/6/408632/Pandemic-Cited-As-Unum-Faces-Major.aspx (Last accessed March 9, 2021).

147.  On information and belief, as a result of Unum's deficient claims reserves and revenue and profitability, it has engaged in aggressive LTD claim termination efforts companywide.

148.  On information and belief, Mr. Ortega was a victim of Unum's corporate efforts to drive profitability.

149.  Mr. Ortega is informed and believes that Unum's conduct in this case would violate the terms of the 2005 California Settlement Agreement.

150.  Under the de novo standard of review, to be entitled to benefits, Mr. Ortega need only prove by a preponderance of the evidence that he is Disabled.

151.  Even under the abuse of discretion standard of review, Unum abused its discretion, because its decision terminating Mr. Ortega's disability benefits was arbitrary and capricious unduly influenced by Unum's financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

152.  Mr. Ortega is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Unum's reviewing physicians', its employees', and its

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Ortega's LTD claim.

153.  Under the de novo standard of review, Mr. Ortega is entitled to discovery regarding, among other things, the credibility of Unum's medical reviews and Unum's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

154.  Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Ortega is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

155.  Mr. Ortega is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

156.  Pursuant to 29 U.S.C. § 1132(g), Mr. Ortega is entitled to recover his attorneys' fees and costs incurred herein.

157.  Mr. Ortega is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Unum and AvAir Pros)**

158.  All other paragraphs are incorporated by reference.

159.  Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

160. Unum is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Ortega.

161. AvAir Pros is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Ortega.

162. Under 29 U.S.C. § 1104(a), Unum and AvAir Pros are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man or woman acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

163. Under ERISA, which is founded in trust principles, Unum and AvAir Pros are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

164. In multiple ways throughout the administration of Mr. Ortega's claim, Unum and AvAir Pros breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

165. Unum's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Unum's claims handling was discharged imprudently and caused Mr. Ortega serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

166. Unum failed to reasonably investigate Mr. Ortega's claim.

167. Unum ignored meaningful, objective evidence of Mr. Ortega's ongoing Disability, including the opinions of his treating provider and other independent experts.

168. Unum mischaracterized Mr. Ortega's regular occupation in a manner supportive of the termination of his benefits.

169. Unum employed biased reviewers with longstanding insurance industry ties to generate unfavorable medical opinions resulting in the termination of Mr. Ortega's LTD claim.

170. Unum engrafted superfluous requirements of proof onto the Plan.

171. Unum's conduct evinces an outcome-oriented approach to Mr. Ortega's claim.

172. On information and belief, Unum instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

173. Mr. Ortega is informed and believes that Unum's employees are trained in administering claims in the best interests of Unum, not Plan participants.

174. Unum demonstrated bias and malice against Mr. Ortega through its employees. Instead of fully and fairly reviewing the medical evidence, Unum unreasonably denied Mr. Ortega's claim based on unreliable evidence.

175. Mr. Ortega is informed and believes that Unum has targeted claims under the Plan, including Mr. Ortega's, which is a breach of fiduciary duty.

176. On information and belief, Unum breached its fiduciary duty to Mr. Ortega by terminating his claim in an effort to avoid its financial liability.

177. Unum's failure to act prudently and in the best interests of Mr. Ortega is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Unum's conduct as it relates to Mr. Ortega's claim.

178. AvAir Pros breached its fiduciary duties by failing to perform the fiduciary duties imposed by ERISA, including having plan documents that meet the statutory requirement, failing to monitor Unum's claim handling, failing to ensure Unum performed its duties under the Plan, and failing to take prudent or appropriate corrective action.

179. To the extent that Unum's denial of benefits caused Mr. Ortega harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

180. Based on the facts of this case, Mr. Ortega has "other equitable relief" available to him in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Ortega whole for his losses from Unum's and AvAir Pros' breaching conduct.

181. Mr. Ortega has experienced significant financial harm flowing from the wrongful termination of his benefits.

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

182. Mr. Ortega depleted his emergency savings and 401k to help meet his financial obligations after the termination of his benefits.

183. Mr. Ortega has relied on loans from friends and incurred high-interest credit card debt to meet his financial obligations after the termination of his benefits.

184. Still, Mr. Ortega has been unable to fully meet his financial obligations and has experienced financial penalties as a result.

185. Due to the wrongful termination of his benefits, Mr. Ortega could no longer afford COBRA insurance and has foregone some necessary medical treatment.

186. The Court has broad discretion to fashion appropriate relief to make Mr. Ortega whole and should mold the relief necessary to protect the rights of the participants.

187. Mr. Ortega is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

188. He is entitled to enjoin any act or practice by Unum and AvAir Pros that violates ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

189. Unum was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Ortega's benefits for its own profit.

190. Unum engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

191. Unum acted with malice and in bad faith against Mr. Ortega, which constitutes a violation of its fiduciary obligations.

192. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Ortega by Unum's and AvAir Pros' breach of fiduciary duty violations.

193. As a direct and proximate result of the breaches of fiduciary duty, Mr. Ortega suffered actual, *significant* financial harm and has incurred financial expense.

194. Mr. Ortega is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

195.  Pursuant to 29 U.S.C. § 1132(g), Mr. Ortega is entitled to recover his attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Mr. Ortega prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.      All past and future owed LTD benefits under the terms of the Plan;

B.      Clarifying and determining Mr. Ortega's rights to future benefits under the terms of the Plan;

C.      For any other benefits Mr. Ortega may be entitled to receive under the Plan due to his disability;

D.      All other equitable relief that is proper as a result of Unum's and AvAir Pros' breaches of fiduciary duties;

E.      An award of Mr. Ortega's attorneys' fees and costs incurred herein;

F.      An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.      For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 16th day of March, 2021.

RONSTADT LAW, PLLC


By: *s/ Erin Rose Ronstadt*
        Erin Rose Ronstadt
        Clayton W. Richards
        Attorneys for Plaintiff

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050